CHRISTOPER W. CARSON, ESQ.
Nevada Bar No. 9523
TRENT L. RICHARDS, ESQ.
Nevada Bar No. 11448
**SAGEBRUSH LAWYERS**
112 S. Water Street, Suite 104
Henderson, Nevada 89015
Phone: (702) 800-7634
Fax: (702) 800-7635
Email: ccarson@sagebrushlawyers.com
       trichards@sagebrushlawyers.com

*Admitted Pro Hac Vice*
T. CHRISTOPHER TUCK, ESQ.
ROBERT S. WOOD, ESQ.
D. CHARLES DUKES, II, ESQ.
T.A.C. HARGROVE, II, ESQ.
**ROGERS, PATRICK, WESTBROOK & BRICKMAN, LLC**
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, South Carolina 29464
Phone: (843) 727-6500
Fax: (843) 216-6509
Email: ctuck@rpwb.com
       bwood@rpwb.com
       cdukes@rpwb.com
       thargrove@rpwb.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSEPH McDOUGALL and AUSTIN WALLACE, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOILING CRAB VEGAS, LLC,<br><br>Defendant. | CASE NO.: 2:20-cv-01867-RFB-NJK<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT** |

Please take notice that Plaintiffs Joseph McDougall and Austin Wallace, individually and on behalf of all other similarly situated Opt-In Plaintiffs, move the Court for approval of a collective action settlement.

This motion is made and based upon the below Memorandum of Points and Authorities, the exhibits filed herewith, all pleadings and papers on file in this action, and upon such further oral or documentary evidence as may be presented at the time of any hearing in this matter.

Respectfully submitted,

April 1, 2024

**ROGERS, PATRICK, WESTBROOK & BRICKMAN, LLC**

/s/ *T. Christopher Tuck*
T. Christopher Tuck, Esq.
Robert S. Wood, Esq.
D. Charles Dukes, II, Esq.
T.A.C. Hargrove, II, Esq.
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, South Carolina 29464
Phone: (843) 727-6500
Fax: (843) 216-6509
ctuck@rpwb.com
bwood@rpwb.com
cdukes@rpwb.com
thargrove@rpwb.com

CHRISTOPER W. CARSON, ESQ.
Nevada Bar No. 9523
TRENT L. RICHARDS, ESQ.
Nevada Bar No. 11448
**SAGEBRUSH LAWYERS**
112 S. Water Street, Suite 104
Henderson, Nevada 89015
Phone: (702) 800-7634
Fax: (702) 800-7635
ccarson@sagebrushlawyers.com
trichards@sagebrushlawyers.com

*Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Joseph McDougall and Austin Wallace filed this lawsuit, individually and on behalf of other similarly situated employees, to recover tip wages that were misappropriated by Defendant The Boiling Crab Vegas, LLC, through the company's use of illegal tip pools at its Boiling Crab restaurant in Las Vegas, Nevada from March 23, 2018 to October 26, 2020.

During this time, Defendant maintained a uniform pay policy that required all front-of-house ("FOH") staff, including servers, cashiers, bus-runners and To-Go employees, to remit their tips from each shift into tip pools, which redistributed a portion of those tips to the Daily Shift Leads (a/k/a, Designated Shift Leads, Dining Shift Leads, or Leads on Duty) (hereinafter "DSLs"), whose primary responsibility was to manage the restaurant "floor" and supervise the FOH staff.

This case was conditionally certified as a collective with thirty valid opt-ins (the "Collective"). Following the grant of partial summary judgment to Plaintiffs under the Fair Labor Standards Act ("FLSA") (ECF No. 103), the parties engaged in a mediation with Magistrate Judge Elayna J. Youchah. That mediation yielded a settlement structure which provides comprehensive relief and eliminates the uncertainty in competing damages analyses and an appeal on the merits. For the reasons set forth below, the proposed settlement should be approved.

## II. SUMMARY OF THE SETTLEMENT

By any objective standard, the parties have provided outstanding relief to the class. The parties have an amalgamation of records which permit the calculation of losses at a granular opt-in level across two periods of time: (a) the era where tip records no longer exist but wage records permit analysis by payroll period; and (b) the era where contemporaneous tip records were made and preserved and thus allow for shift-by-shift calculations. Accordingly, this proposed settlement

is a not a common fund and instead directs damages to each employee as such damages were actually incurred.

Here, the parties agreed, for the purpose of settlement, to utilize Plaintiffs' own damages analysis. After excluding invalid opt-ins, the actual damages across the collective total approximately $35,000. The settlement intends to direct payments to the Collective at 90% of actual losses, plus 90% in additional monies to be paid as liquidated damages. *See* Settlement Agreement, Exh. A. Those numbers yield total payments to the Collective at $63,533.21. Individual payments range from less than one hundred dollars for exceedingly short-term workers to a high of $5394.24. Across the Collective, there are eighteen opt-ins who will recover in excess of $1,000 each. The Collective will receive a Notice of Settlement with two months to submit a claim. *See* Notice, Exh. B.

The settlement is capped at $175,000 and that cap is inclusive of incentive awards, attorneys' fees and costs. Plaintiffs' counsel propose that the two named Plaintiffs, McDougall and Wallace, recover $2,500 each to recognize their efforts in initiating and assisting in litigation that now extends into a fourth year. Plaintiffs' counsel then seek reimbursement of case costs, currently in the amount of $31,199.83, and the residual sum[1] as attorneys' fees, which represents a massive, but agreed upon, reduction to lodestar. *See* Tuck Decl., Exh. C.

### III.  LEGAL STANDARD

FLSA settlements require the approval of either the Secretary of Labor or a district court. *Semimiano v. Xyris Enterprise, Inc.*, 602 Fed. Appx. 682, 683 (9th Cir. 2015) (citing *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013); 29 U.S.C. 216 (c)). While the Ninth Circuit has not addressed approval of FLSA settlements, district courts appear to follow the Eleventh Circuit in *Lynn's Food Stores*. *Almodova v. City & Cty. of Honolulu*, Civ. No. 07-00378 DAE-LEK, 2010

---

[1] The current residual amount is $75,266.96, but this number will fall as costs of administration are incurred moving forward.

4

WL 1372298, at *4 (D. Haw. March 31, 2010), *report and recommendation adopted*, Civ. No. 0700378 DAE-LEK, 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-1354 (11th Cir. 1982)).

Pursuant to *Lynn's Food Stores*, the Court must first find that a bone fide FLSA dispute exists. "The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *2 (N.D. Cal. June 22, 2017) (citing *Lynn's Food Stores*, 679 F.2d at 1353 n.8).[2]

## IV. LEGAL ARGUMENT

**A.    A Bone Fide Dispute Exists as to Whether DSL Duties are Primarily Managerial.**

On March 23, 2018, Congress enacted the Consolidated Appropriations Act ("the Act"), which, *inter alia*, revised section 203(m) of the FLSA. *See* Consolidated Appropriations Act, Pub. L. 115-141, 132 Stat. 348, Title XII, Sec. 1201(a) (March 23, 2018). The Act added new language to section 203(m) that states "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." *Id.* (codified as amended at 29 U.S.C. § 203(m)(2)(B)). To enforce this prohibition, Congress added a provision allowing employees to sue their employer for any tips unlawfully kept—plus an equal amount as liquidated damages. *Id.*

---

[2] The district court must find a bona fide dispute prior to a reasonableness analysis.

§1201(b) (codified as amended at 29 U.S.C. § 216(b)) (creating a private right of action against an employer that violates § 203(m)(2)(B)).[3]

A final rule issued by the Wage and Hour Division of the U.S. Department of Labor provides that the "duties test" found in 29 C.F.R. § 541.100(a)(2)-(4) is used to determine whether an employee is a manager or supervisor under section 203(m)(2)(B), and thus prohibited from taking tips from a tip pool.[4] Section 541.100 provides in pertinent part:

> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> …
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a)(2)-(4).

In this litigation, Plaintiffs argued that the primary duty of DSLs was to manage the floor and supervise the FOH staff, that the DSLs customarily directed the work of two or more employees, and that DSL suggestions and recommendations on personnel matters were given particular weight.

Defendant opposed these claims under a variety of theories. For example, Defendant argued that DSLs are non-exempt employees and thus allowed to participate in Defendant's tip pool under

---

[3] *See also Norsoph v. Riverside Resort & Casino, Inc.*, 2-13-CV-00580-APG-EJY, 2020 WL 641223, at *3 (D. Nev. Feb. 11, 2020), *amended by* 2-13-CV-00580-APG-EJY, 2020 WL 8571839 (D. Nev. May 21, 2020).

[4] 85 FR 86756, at 86763, *available at* https://www.govinfo.gov/content/pkg/FR-2020-12-30/pdf/2020-28555.pdf (last accessed Oct. 26, 2022).

the FLSA because DSLs occasionally worked shifts as non-DSLs (*e.g.*, server, cashier, DSL training, etc.) in the same pay period. Moreover, Defendant claimed that the primary duty of DSLs was not management because a higher-level manager was always on duty at the restaurant; that DSLs did not make recommendations on hiring; and that DSLs were not involved in the disciplinary process. These arguments were rejected by the Court when it granted partial summary judgment to Plaintiffs on liability (ECF No. 103), but Defendant still has an opportunity to appeal that decision. Accordingly, a bone fide dispute exists over the FLSA.

**B.     The Proposed Settlement is Fair and Reasonable.**

Courts in the Ninth Circuit apply class action reasonableness factors to the approval process for proposed FLSA collective action settlements. *See Almodova*, 2010 WL 1372298, at *4. These factors include:

> [The] strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* While some factors will have little to no relevance given the inherent differences between class actions and FLSA collective actions, most of the factors remain relevant and should be applied in a "totality of circumstances" analysis. *Talavera v. Sun-Maid Growers of California*, No. 1:15-CV-00842-DAD-SAB, 2020 WL 2195115, at *7 (E.D. Cal. May 6, 2020) (citing *Slezak*, at *3).

**i.     Strength of Plaintiffs' Case**

Plaintiffs prevailed on their motion for partial summary judgment as to liability, leaving only damages to be determined. However, in the absence of settlement, Defendant will appeal and assert, among other arguments, that DSLs routinely participated in job duties that were not managerial and had no final authority to act without supervisor approval. This argument, if

accepted by the Ninth Circuit, is a silver bullet defense that would reverse the assured relief available to the Collective here. This factor thus weighs in favor of settlement.

ii.     **Risks of Further Litigation**

Plaintiffs' damages analysis is divided into two periods, one where contemporaneous tip pool spreadsheets exist and another earlier period where no tip pool data can be accessed. Consequently, there is a substantial portion of damages that are reliant on bi-weekly payroll data and extrapolations that can be drawn therefrom, rather than shift-specific data. There is a risk, under that scenario, that a fact finder will not accept Plaintiffs' full damages calculation.

Moreover, Defendant intends to challenge the imposition of liquidated damages by asserting it had a good faith basis to include DSLs in the restaurant's tip pool. That argument, if successful, would eliminate half of the damages awarded under this settlement.

Finally, Defendant would appeal the grant of partial summary judgment and argue that DSLs were entitled to participate in the tip pool. If Defendant prevailed on that argument, the Collective would take nothing from this litigation.

These risks, taken together, weigh in favor of approval. *Slezak*, at * 4 (risk factor supports approval where "there is a significant risk that litigation might result in a lesser recover[y] . . . or no recovery at all.") (citing *Bellinghausen v. Tractor Supply Company*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015)).

iii.    **Stage of the Proceedings**

"The court is required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that 'the parties carefully investigated the claims before reaching a resolution.'" *Talavera*, at *7 (citing *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014)). "This factor weighs in favor of approval if the parties have sufficient information to make an

informed decision regarding settlement." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Here, the parties litigated for more than three years prior to settlement. The parties engaged in extensive discovery, including twelve depositions and granular review of payroll and tip data. There were multiple rounds of key briefing, one of which led to entry of partial summary judgment. Finally, the claims were mediated before Judge Youchah, a judge with vast experience in wage cases. In Plaintiffs' view, there are few cases litigated to this extent prior to settlement, and thus this factor heavily weighs in favor of approval.

### iv. Expense, Complexity, and Duration of Further Litigation

This litigation involves thirty opt-in Plaintiffs whose testimony would be required at trial to support a damages presentation, particularly for the earlier damages period where shift-specific data is unavailable. In addition, Defendant would be expected to present some arguments at trial that overlap with merits issues that arose at summary judgment for the sole purpose of asserting its good faith argument and to avoid the imposition of liquidated damages. The resources required for trial and appeal would dwarf the actual losses incurred by Collective members and present an irrational approach to the resolution of this dispute. This factor weighs heavily in support of approval.

### v. Amount Offered in Settlement

The amount offered at settlement represents significant relief for the Collective. Each opt-in will receive 90% of his or her actual losses followed by an additional 90% added as liquidated damages. Importantly, the 90% target reflects 90% of Plaintiffs' claimed damages instead of a percentage of a stipulated sum to reconcile competing damage numbers. This factor weighs heavily in support of approval.

### vi. Experience and Views of Counsel

The attorneys for each side in this litigation are highly experienced in wage litigation. Plaintiffs' counsel routinely practice in the area of FLSA and other complex litigation and strongly support a settlement with the negotiated relief obtained at mediation. The only possible means to improve the settlement is to proceed through trial and appeal and prevail at every turn only to improve the damages recovery by 10%. Under this scenario, it is illogical and a derogation of Plaintiffs' counsels' duties to the Collective to proceed with further litigation. This factor weighs heavily in support of approval.

### vii. Plaintiffs' reaction to the Settlement

Both named Plaintiffs, McDougall[5] and Wallace, support this proposed settlement and have executed the settlement agreement. This factor weighs in support of approval.

### C. Incentive Awards Should be Approved.

This Court has the discretion to approve incentive awards in a FLSA case to compensate the named Plaintiffs for their work done on behalf of the Collective. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016) (citing *Jones v. Agilysis, Inc.*, No. C 12-03516 SBA, 2014 WL2090034, at *3 (N.D. Cal. May 19, 2014)). Considerations for such an award include "among other things, 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from these actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

Plaintiffs McDougall and Wallace initiated this FLSA litigation in Nevada despite now residing across the country. Over a period of more than three years, each named Plaintiff cooperated in written and deposition discovery, communicated consistently regarding case

---

[5] McDougall was a law student during the time of his employment with Defendant and is currently a practicing attorney.

developments, acted as a liaison with additional opt-ins to coordinate new evidence, and participated at mediation with an outstanding result for the Collective at a 90% recovery of claimed losses. The recommended service awards fall well within the range of reasonable. *Id.* (approving $5,000 individual service award for FLSA settlement ranging from 26% to 50% of recoverable damages).

**D.    The Requested Attorneys' Fees and Expenses are Fair and Reasonable.**

The FLSA provides for fee shifting by awarding prevailing plaintiffs reasonable attorneys' fees and costs. 20 U.S.C. § 216(b). Because this settlement did not lead to a common fund for distribution to the Collective, the lodestar method is the better means to award fees so that opt-ins are not responsible for any portion of a fee award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (district courts have discretion to apply "either the percentage-of-the-fund or the lodestar method").

While lodestar is the proper approach for consideration of Plaintiffs' fee request, the practical outcome in this litigation is a less-than-lodestar recovery. Plaintiffs' counsel agreed at mediation to a vastly reduced fee recovery to provide Defendant with certainty and to conclude the litigation without spawning an additional round of litigation centered on fees. Even after applying lodestar concessions,[6] Plaintiffs' counsel incurred lodestar of $240,037.50. However, Plaintiffs' counsel has agreed that, after reimbursement of expenses and to fit within the settlement's agreed global cap, the fee award will not exceed $75,266.96.[7] The effective fee request thus results in a negative multiplier.

The application of the *Kerr* factors, as outlined below, also supports the fee request. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Cunningham v. County of Los*

---

[6] *See* Declaration of T. Christopher Tuck at ¶¶ 3-4.

[7] This number will fall as costs of administration are incurred.

11

*Angeles*, 879 F.2d 481, 487 (9th Cir. 1988).  Because many fee considerations are already subsumed within the initial lodestar, courts consider, as additional factors, the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained.  *Kerr*, 526 F.2d at 70; *see also Jordan v. Multnomah Co.*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987).

      **i.**     **The Novelty and Complexity of the Issues**

This litigation involved competing interpretations on the meaning of a change in federal law for tip pools adopted in 2018, and the duties test that determined whether liability would follow.  The damages analysis also contained a significant complicating factor due to the destruction of hard copy tip pool notebooks prior to the initiation of litigation.  Plaintiffs' counsel reconstructed damages for the era where tip data was missing by utilizing payroll data and screening out confounding factors for the review, such as employees who only sometimes worked as DSLs.  This factor weighs in favor of approval.

      **ii.**    **The Special Skill and Experience of Counsel**

Plaintiffs' counsel has vast experience in complex litigation, including collective and class action cases.  Excerpts of this experience was noted on Plaintiffs' prior class certification motion that was denied without prejudice but has been mooted with this proposed settlement.  *See* ECF Nos. 43-5, 43-6 and 55-3.  This factor weighs in favor of approval.

      **iii.**   **The Quality of Representation**

Plaintiffs' counsel obtained a partial grant of summary judgment on litigation that spanned more than three years, involved thirty opt-ins, significant discovery of those opt-ins, and eventually a global mediation.  This factor weighs in favor of approval.

    **iv.**    **The Results Obtained**

The U.S. Supreme Court has noted that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of attorney's fees[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Here, the Collective will receive 90% of actual losses and another 90% of those losses paid as liquidated damages. Under any reasonable standard, this outcome is outstanding and weighs strongly in favor of approval.

### V.  CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request the Court enter the proposed order approving the Settlement Agreement, directing relief to the Collective, granting incentive awards, and approving Plaintiffs' fees and costs as agreed to in the settlement.

                                            Respectfully submitted,

April 1, 2024                         **ROGERS, PATRICK, WESTBROOK & BRICKMAN, LLC**

                                            /s/ *T. Christopher Tuck*
                                            T. Christopher Tuck, Esq.
                                            Robert S. Wood, Esq.
                                            D. Charles Dukes, II, Esq.
                                            T.A.C. Hargrove, II, Esq.
                                            1037 Chuck Dawley Blvd., Bldg. A
                                            Mount Pleasant, South Carolina 29464
                                            Phone: (843) 727-6500
                                            Fax: (843) 216-6509
                                            ctuck@rpwb.com
                                            bwood@rpwb.com
                                            cdukes@rpwb.com
                                            thargrove@rpwb.com

                                            CHRISTOPER W. CARSON, ESQ.
                                            Nevada Bar No. 9523
                                            TRENT L. RICHARDS, ESQ.
                                            Nevada Bar No. 11448
                                            **SAGEBRUSH LAWYERS**
                                            112 S. Water Street, Suite 104
                                            Henderson, Nevada 89015
                                            Phone: (702) 800-7634
                                            Fax: (702) 800-7635

1
2     ccarson@sagebrushlawyers.com
      trichards@sagebrushlawyers.com
3
      *Attorneys for Plaintiffs*